United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-1750
_____

Starlet L. Pegump,                        *
                                          *
          Appellant,                      *
                                          *  Appeal from the United States
     v.                                   *  District Court for the Southern
                                          *  District of Iowa.
Rockwell International                     *
Corporation; International                *
Brotherhood of Electrical                 *
Workers, Local Union 1634,                *
                                          *
          Appellees.                      *

_____

Submitted: January 15, 1997

Filed: March 21, 1997
_____

Before BEAM, ROSS, and LOKEN, Circuit Judges.
_____

BEAM, Circuit Judge.

     Starlet Pegump appeals the district court's[1] grant of summary
judgment for defendants Rockwell International Corporation
(Rockwell) and the International Brotherhood of Electrical Workers
Union Local 1634 (Union) in her action for breach of the collective
bargaining agreement and for breach of the duty of fair
representation.  We affirm.

_____

     [1]The Honorable Ross A. Walters, United States Magistrate Judge
for the Southern District of Iowa, acting upon consent of the
parties.  See 28 U.S.C. § 636(c).

## I.  BACKGROUND

Pegump worked for Rockwell as an assembler until she was suspended and fired for allegedly threatening to shoot two fellow employees.  Two of Pegump's coworkers reported that they overheard her threaten to bring a gun to work and shoot two plant managers. Pegump denied ever making the statement but said that if she had made the statement, she would have only been joking.

Following an investigation, Rockwell's security director determined that Pegump had probably made the statement, whether or not in jest.  Concerned that she posed a risk to plant safety, Rockwell suspended Pegump from work on August 25, 1994, pending further investigation.

During the course of this investigation, Pegump's psychiatrist[2] wrote a letter on her behalf, stating that Pegump had never posed a risk to herself or to others.  In response to this letter, and in an effort to confirm the psychiatrist's conclusion, Rockwell requested a medical release from Pegump to discuss the situation with her psychiatrist, or, in the alternative, for Pegump to meet with a Rockwell-provided psychiatrist to discuss her mental condition. Pegump refused to give such a release, arguing that her medical records had nothing to do with her suspension.  She was fired on February 7, 1995.

Immediately following Pegump's suspension, the Union filed a grievance with Rockwell on Pegump's behalf.  After Pegump refused Rockwell's medical release request, the Union president encouraged

_____

[2]Pegump had seen a psychiatrist, complaining that she was often tired.  The psychiatrist, Dr. Castillo, prescribed anti-depressant medication for Pegump at that time.

Pegump to cooperate with the investigation and informed her that her lack of cooperation was preventing the Union from proceeding

with her grievance. In response to this letter, Pegump reiterated her belief that her medical records were irrelevant to her suspension and continued to refuse to issue the release.

Pegump brought this action in state court against Rockwell for breach of the collective bargaining agreement and against the Union for breach of its duty of fair representation. The action was later removed to federal court. Both Rockwell and the Union filed motions for summary judgment which the district court granted. The district court found that Rockwell could properly suspend and terminate Pegump under the available facts and that the Union had provided reasonable assistance to Pegump. On appeal, Pegump argues that summary judgment was not proper because genuine issues of material fact exist.

## II. DISCUSSION

Summary judgment is proper only when no genuine issue of material fact is present and judgment should be awarded to the movant as a matter of law. Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996). A fact is material if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We review the entry of summary judgment de novo, giving the nonmoving party the benefit of every reasonable inference drawn from the evidence. Yowell, 89 F.3d at 544.

Pegump brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. That statute allows a labor organization representing an employee to bring a breach of contract suit against an employer for a labor violation. For an employee to bring such a suit on her own behalf, prior to the exhaustion of internal grievance procedures, however, she must

allege both that the employer committed a labor violation, and that the union has violated its duty of fair representation.  <u>Vaca v.</u>

<u>Sipes</u>, 386 U.S. 171, 186 (1967). The district court found that Pegump failed to prove either allegation. We agree.

We first address Pegump's allegations that the Union breached its duty of fair representation. Pegump claims that the Union arbitrarily refused to process her grievance, or in the alternative, processed it in a perfunctory manner. A union is granted broad latitude in its dealings with its members and its performance is viewed in a highly deferential light. <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65, 78 (1991). A breach of the duty of fair representation occurs only when a union's conduct is "arbitrary, discriminatory, or in bad faith." <u>Vaca</u>, 386 U.S. at 190. Applying those standards, we find that the Union did not breach its duty of fair representation.

It is undisputed that immediately following Pegump's suspension, the Union filed a grievance with Rockwell. Although the Union later ceased its efforts to process the grievance, it did so only after Pegump refused to cooperate in the investigation of her conduct. Additionally, the Union president participated in the investigation of the situation. He spoke with all persons who had direct knowledge of the alleged threats: Pegump, the coworker to whom she made the statement, and the two coworkers that overheard and reported the statement. The president also discussed Pegump's situation with the international union representative, Rockwell's Human Resource Department, security personnel at other facilities, and Pegump's attorney.

Although the Union president concurred with Rockwell in requesting Pegump's medical information, that position was not unreasonable. Because of the evidence surrounding the statement and Pegump's recent treatment for depression, the Union can hardly

-7-

be faulted for such cooperation.  Although Pegump may believe the Union was a less than zealous advocate, under the facts of this

case, the Union simply did not breach its duty of fair representation to her.

Pegump's section 301 claim fails for the additional reason that Rockwell's actions did not violate the collective bargaining agreement (CBA). The CBA allowed for the termination of Union employees for just cause. A violation of Rockwell's employee handbook policy prohibiting disruptive or offensive behavior constitutes such cause. The right to discharge for cause necessarily implies the right to reasonably investigate whether such cause exists. Under the facts of this case, no jury could find that Rockwell's request for a medical release, to rule out any danger posed by Pegump's mental condition, was beyond the scope of a reasonable investigation of the situation or its potential for harm. Therefore, as a matter of law, Rockwell's actions did not violate the CBA. We have considered the remainder of Pegump's arguments and find them to be without merit.

## III. CONCLUSION

Finding no error in the district court's grant of summary judgment in favor of Rockwell and the Union, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.